Curia, per
Richardson, J.
Dr. Magill bound himself to pay sixty dollars, in case he should dismiss his apprentice, or return her before the end of her term, to the Commissioners of the Orphan House, without their consent. The defence admits that the Doctor did dismiss his apprentice, but did so because she was disobedient and vicious, and urges that the dismissal was therefore justifiable. The rejoinder to such defence is, that no matter what was the vicious conduct of the apprentice, Dr. Magill undertook, as master, to restrain or correct her misconduct, had lawful authority to do so, and if he failed of success, and dismissed her on that account, such dismissal presents an infraction of the contract — the reason wby a certain sum in the nature of liquidated damages was fixed and agreed upon in lieu of uncertain damages, was, to prevent dispute in tffat very event.
The question between the parties is upon the strict legal construction of a contract of small amount, but involving important principles. If Dr. Magill had dismissed his apprentice even cruelly and wantonly, he would have had to pay but sixty dollars. And so on the other hand, if he failed to restrain her misbehaviour, and dismissed her for misconduct, however great, his penalty is the same. His literal covenant is to pay that sum if she should be dismissed. But turn to the cause, motive, or end of the whole contract. The consideration for which Dr. Magill laid himself under such a penalty to the Commissioners of the Orphan House, was not that the apprentice should conduct herself orderly; — that depended upon the apprentice herself, and was made the duty of the Doctor so to require, from the moment he was *58 made master of one short of the age of legal discretion. The true consideration evidently was, that the Doctor was made the master of the apprentice, with all the rights, duties and advantages of a master, according to the laws of the State. Such assuredly was the warranty on the part of the Commissioners ; in consideration of which warranty oí the rights of a master, the Doctor laid himself under the penalty if he should dismiss or return the apprentice before the end of her term. It is the duty of every master to persevere, and strive to correct and improve his apprentice throughout the whole term of service. When the Doctor yielded to her perverseness, and dismissed his fro ward pupil, he himself failed in his primary undertaking, and disappointed the end and motive of the Commissioners, and he cannot convert his own failure, whatever was the immoral conduct oí his apprentice, into a legal defence against his covenant to pay a forfeit stipulated and agreed upon, in the event of his dismissing the apprentice at all. It follows then, rationally and satisfactorily, as well as from the letter of his contract to pay certain liquidated damages, that the Doctor entered into an independent covenant with the Commissioners, in no way bottomed upon any warranty for the good behaviour of Arm Delany — but in consideration of the assignment made to him of the rights of a master. This assignment and the Doctor’s covenant to pay .sixty dollars in a certain event, were reciprocal considerations, each for the other.
If it be asked, is there no way for the master of a vicious apprentice to get rid of his contract, the answer is found in the Act of 1740 and that of 1789, (P. L. p. 176 and 478.) These Acts provide that either the master or his apprentice may make complaint before two Justices of the Peace or a Judge, who may discharge the apprentice for sufficient cause. This has been adjudged in the case of Belcher and wife ads. Commissioners of the Orphan House, (2 M’Cord R. 24.) But to do so, requires a judicial trial, in which both parties are to *59 be heard, and neither party is competent to dissolve the contract upon his own mere motion.
Bailey, for the motion; Harllee, contra.
A new trial is therefore granted.
Earle and O’Neall, JJ. concurred.